******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

RANDY A. WRIGHT *v.* COMMISSIONER
OF CORRECTION
(AC 46768)

Elgo, Moll and Clark, Js.

*Syllabus*

The petitioner, who had been convicted of sexual assault in the first degree and other crimes, appealed, on the granting of certification, from the habeas court's judgment denying in part his petition for a writ of habeas corpus. He claimed, inter alia, that the court improperly rejected his claim that his criminal trial counsel, F, rendered ineffective assistance by advising him to flee the state during trial or by leading him to believe that it was in his best interest to do so. *Held*:

The habeas court did not err in concluding that the petitioner failed to establish that F rendered ineffective assistance with respect to his alleged advice about fleeing the state, as the court's factual findings, including its finding that F did not advise the petitioner to flee, were well supported by the evidence, which this court would not reweigh in a manner that undermined the habeas court's conclusions.

This court could not conclude that the habeas court's incorrect ruling, which precluded the petitioner from testifying as to alleged statements F made about fleeing the state, was so fundamentally unfair as to deny the petitioner his due process right to a fair trial, as, although the proffered testimony was admissible nonhearsay that was offered not for its truth but to prove the nature of F's advice and the effect it had on the petitioner, the habeas court permitted the petitioner to testify at length as to the substance of that advice, his understanding of that advice, and the actions he took in reliance thereon, even if he was not permitted to recount the exact words F used.

The petitioner's contention that the habeas court improperly failed to consider certain evidence that supported his claim that F rendered ineffective assistance in connection with his trial performance was unavailing, as the court did not err in concluding that the petitioner failed to establish that he was prejudiced by F's cross-examination of a physician who testified for the state, which did not amount to, as the petitioner claimed, an admission that he engaged in unlawful sexual contact with the victim or that it gave the prosecutor an opportunity to graphically explain to the jury the anatomy of sexual penetration, and there was no basis to support the petitioner's claim that the victim's statement to the police, which F had offered into evidence at the criminal trial but which was not offered into evidence at the habeas trial, was so prejudicial that it impacted the jury's verdict or that the state relied heavily on it to support its case.

This court declined to review the petitioner's unpreserved claims that the habeas court improperly failed to address F's statements and actions after the petitioner failed to appear in court in determining whether F rendered ineffective assistance or had a conflict of interest and that F rendered ineffective assistance at the petitioner's sentencing proceeding, as none of those claims were presented to the habeas court.

(*One judge concurring in part*)

Argued November 21, 2024—officially released October 21, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition in part, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Dina S. Fisher*, assigned counsel, for the appellant (petitioner).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *Anne F. Mahoney*, state's attorney, *Angela Macchiarulo*, supervisory assistant state's attorney, and *Susan Campbell*, assistant state's attorney, for the appellee (respondent).

*Opinion*

CLARK, J. In the criminal trial underlying this habeas corpus matter, the petitioner, Randy A. Wright, was convicted and sentenced in absentia after he absconded during trial following the first day of evidence. Following the granting of his petition for certification to appeal, the petitioner appeals from the judgment of the habeas court denying in part his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court erred by (1) rejecting his claim that he was deprived of his right to the effective assistance of counsel when his trial counsel allegedly advised him to flee the state during trial, (2) precluding him from testifying as to the substance of that alleged

advice, (3) failing to consider certain evidence relevant to his claim that trial counsel rendered ineffective assistance in connection with his handling of the trial, (4) failing to address whether trial counsel's alleged concealment from the trial court of his role in the petitioner's decision to flee constituted ineffective assistance of counsel and/or a conflict of interest, and (5) failing to address whether he was deprived of his right to the effective assistance of counsel at sentencing. We affirm the judgment of the habeas court.

The following facts and procedural history, as set forth by this court in the petitioner's direct appeal and as found by the habeas court, are relevant to our resolution of this appeal. "The victim[1] was born on September 14, 1998, and the [petitioner] was born on September 24, 1973. The [petitioner] was a friend of the victim's father, T, and the victim had known the [petitioner] for her entire life. T and the victim's mother, G, are divorced. Following the divorce, T moved out of the family home, and the victim and her sister continued to reside with G. The [petitioner] began a romantic relationship with G and moved into the home, at which point in time the victim was approximately nine years old. Beginning when she was nine years old, and at least once per week for several years after that, the [petitioner] touched the victim inappropriately when the two of them were in her bedroom. The touching began as a back massage during which the [petitioner]

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

removed the victim's bra, but eventually progressed to touching the victim's breasts and clitoris.

"Although the victim and the [petitioner] were largely alone when this touching occurred, on one occasion a family friend, A, who was residing in the home, walked in on the two of them and observed the [petitioner] without a shirt on, laying on the victim's bed with the victim in a 'cuddling position.' A ran out of the room and downstairs to tell G what she had seen, but the [petitioner] ran out after her and denied wrongdoing; an argument ensued. G did not believe A and did not call the police. On another occasion, the victim told her former boyfriend, C, that the [petitioner] had touched her breasts and 'fingered' her but made C promise not to tell anyone. The [petitioner's] touching of the victim continued until approximately September, 2012, at which point the victim moved out of the home and went to live with T. The following month, the victim told T that the [petitioner] had touched her inappropriately, and T subsequently took the victim to the police station so that she could make a statement. In her statement, the victim described an occasion on which the [petitioner] had given her a back massage, undone her bra, and touched her vagina. She also stated that the [petitioner] had removed her bra on several occasions in the past." (Footnote in original; footnote omitted.) *State* v. *Wright*, 235 Conn. App. 143, 146–48,      A.3d (2025).

The petitioner subsequently was arrested and charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The petitioner retained Attorney Vincent Fazzone to represent him at trial. "[The petitioner's] criminal trial began on November 5, 2014. The next day, [the petitioner]

filed a motion for [a] mistrial and to fire [Fazzone] and asked for a continuance of thirty days to hire new counsel. [The trial court, *Swords, J.*] denied his motions for [a] mistrial and continuance [and informed the petitioner that if he did not want Fazzone to continue to represent him, he could represent himself, with Fazzone as standby counsel]. The matter was continued to November 10, 2014, to give [the petitioner] time to [decide whether he wanted to represent himself and, if so, to prepare his defense]. . . .

"On November 10, 2014, [the petitioner] failed to appear in court. [Fazzone] moved for a mistrial, which was denied by Judge Swords, who also deemed [the petitioner's] presence waived. The trial proceeded without [the petitioner], and, on that same day, he was found guilty by the jury. On January [6], 2015, Judge Swords sentenced [the petitioner] in absentia [to twenty years of incarceration followed by twenty-five years of special parole]. [The petitioner] was apprehended in January, 2015, in Virginia and brought back to Connecticut to serve his sentence."

The petitioner commenced this action by filing a self-represented petition for a writ of habeas corpus on November 4, 2016. On October 7, 2019, the petitioner filed the operative amended petition, which contained two counts. In count one, the petitioner alleged that Fazzone had provided ineffective assistance by advising him to flee the state to avoid prosecution and that the trial would stop in his absence. In count two, the petitioner alleged that Fazzone had provided ineffective assistance in various ways in connection with his conduct of the trial, and by failing to file an application for sentence review and an appeal from the judgment of conviction.

On May 3, 2023, the habeas court, *Bhatt, J.*, held a trial on the petition, at which the petitioner testified on

his own behalf and presented the testimony of Fazzone. The petitioner also introduced several exhibits, including the transcripts and the courthouse clerk's file from his underlying criminal trial. The respondent, the Commissioner of Correction, called no witnesses, introduced no exhibits, and did not file a posttrial brief. The petitioner filed a posttrial brief on June 2, 2023.

On June 6, 2023, the habeas court issued a memorandum of decision granting the petition as to the petitioner's claims that Fazzone had provided ineffective assistance by failing to file an application for sentence review and an appeal but denying all other claims. The court rendered judgment restoring the petitioner's right to file an application for sentence review and to appeal from the judgment of conviction and denying the remaining claims.[2] The petitioner subsequently filed a petition for certification to appeal, which the court granted.[3] The petitioner filed the present appeal on August 7, 2023. Additional facts and procedural history will be set forth as necessary.

Before addressing the petitioner's individual claims on appeal, we begin by setting forth the general legal principles relevant to the petitioner's ineffective assistance of counsel claims. "The sixth amendment provides that in all criminal prosecutions, the accused shall

[2] After the habeas court restored the petitioner's right to appeal, on August 3, 2023, the petitioner appealed from his conviction to our Supreme Court, which transferred the matter to this court on February 15, 2024. Following oral argument in the present appeal, we entered an order sua sponte staying this appeal pending final resolution of the petitioner's direct appeal from his conviction. We issued our decision in the petitioner's direct appeal on September 16, 2025; see *State* v. *Wright*, supra, 235 Conn. App. 144; after which we entered an order lifting the stay in the present appeal.

[3] The habeas court initially denied the petition for certification to appeal on June 20, 2023. On November 9, 2023, the petitioner filed a motion for rectification and articulation regarding various aspects of the court's memorandum of decision. On November 30, 2023, after a hearing on that motion, the court vacated its previous denial and granted the petition for certification to appeal.

enjoy the right to the effective assistance of counsel. U.S. Const., amend. VI. This right is incorporated to the states through the due process clause of the fourteenth amendment. See U.S. Const., amend. XIV, § 1; *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)." *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 554, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*, 578 U.S. 941, 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016). Most ineffective assistance of counsel claims are governed by the two part test established by *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Under the two-pronged *Strickland* test, a [petitioner] can only prevail on an ineffective assistance of counsel claim if he proves that (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice. . . . To demonstrate deficient performance, a [petitioner] must show that counsel's conduct fell below an objective standard of reasonableness for competent attorneys. . . . To demonstrate actual prejudice, a [petitioner] must show a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors." (Citations omitted.) *Davis* v. *Commissioner of Correction*, supra, 555.

"*Strickland* recognized, however, that [i]n certain [s]ixth [a]mendment contexts, prejudice is presumed. . . . In [*United States* v. *Cronic*, 466 U.S. 648, 659–60, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)] . . . which was decided on the same day as *Strickland*, the United States Supreme Court elaborated on the following three scenarios in which prejudice may be presumed: (1) when counsel is denied to a [petitioner] at a critical stage of the proceeding; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) when counsel is called upon to render assistance in a situation in which no competent

attorney could do so. . . . In *Cronic*, the court reasoned that such situations indicate that there has been a denial of [s]ixth [a]mendment rights that makes the adversary process itself presumptively unreliable." (Citation omitted; internal quotation marks omitted.) *Cancel* v. *Commissioner of Correction*, 189 Conn. App. 667, 697–98, 208 A.3d 1256, cert. denied, 332 Conn. 908, 209 A.3d 644 (2019). "Our state jurisprudence has recognized that *Cronic* must be interpreted narrowly and applied rarely." *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 649, 153 A.3d 1264 (2017). As our Supreme Court has explained, the *Strickland* standard applies in cases involving "specific errors in representation, for which counsel can provide some reasonable explanation," whereas *Cronic* applies when counsel "complete[ly] fail[s] to advocate for a defendant . . . such that no explanation could possibly justify such conduct . . . ." *Davis* v. *Commissioner of Correction*, supra, 319 Conn. 556.

## I

We first address the petitioner's claims relating to count one of his amended habeas petition.[4] The petitioner claims that the habeas court erred in concluding that he failed to establish that Fazzone had rendered ineffective assistance by either advising the petitioner to flee the state or leading him to believe that it was in his best interest to flee. The petitioner also claims, in the alternative, that the court violated his right to due process by precluding him from testifying as to the substance of Fazzone's alleged advice. The petitioner therefore argues that, if we reject his claim that the court erred in concluding that he failed to establish that Fazzone rendered ineffective assistance as alleged under count one of the amended petition, we should

---

[4] We address the petitioner's claims in a different order than they appear in his principal appellate brief.

remand the case for a new trial on that count. We disagree with both of the petitioner's claims.

The following additional facts and procedural history are relevant to the petitioner's claims pertaining to count one of his amended habeas petition. In support of count one, the petitioner alleged that, after a hearing on a motion he made to remove Fazzone as counsel, Fazzone had "advised [him] that the case was not proceeding in a manner consistent with the petitioner's best interests," "gave the petitioner his case file and gave back $500 of the money [that] the petitioner had paid [Fazzone]," and "told the petitioner that he would need his case file because 'you need it for a new attorney.' " The petitioner further alleged that Fazzone had "instructed the petitioner to flee the [state] so as to avoid further prosecution and his possible conviction," and "advised the petitioner that the court would stop the trial if he fled . . . [and] that the delay caused by [his] flight would give the petitioner the necessary time to retain another lawyer to represent him at a succeeding trial on the same charges." The petitioner also alleged that Fazzone had gone to the petitioner's house the following day, where he "gave [the petitioner] an additional amount of cash," "discussed the petitioner fleeing during his trial," and "suggested to the petitioner that he purchase a 'burner phone' and change his hair color." The petitioner alleged that he "followed Fazzone's advice and left Connecticut . . . under the belief that the trial would stop, and [that] he would have the ability in the [future] to hire new counsel," and that Fazzone's advice had amounted to ineffective assistance of counsel.

At the habeas trial, Fazzone testified about his interactions with the petitioner between November 6, 2014, when the court heard the petitioner's motion to remove Fazzone as counsel, and November 10, 2014, when the petitioner failed to appear for trial. Fazzone testified

that, after the hearing on November 6, he met with the petitioner in a courthouse conference room and outside the courthouse, where the petitioner expressed dissatisfaction with Fazzone's performance and the progress of the trial. Fazzone acknowledged that the topic of the petitioner fleeing was discussed during that meeting but testified that he "did not in any way advise [the petitioner] to flee . . . ." Fazzone also testified that, at some point during that meeting, he refunded the petitioner $500 from the amount the petitioner had paid toward his fee. He testified that the petitioner recently had paid him $500 and that he "didn't feel that it was fair that I . . . should keep any money that [the petitioner] had just given me for . . . future representation if [he was] going to hire new counsel." Fazzone testified that he refunded the petitioner that money so he could use it "as a retainer for another attorney." Fazzone also testified that he gave the petitioner "as much . . . of the discovery as I could in the event that [the petitioner] wanted to meet with another attorney and have . . . at least a copy."

Fazzone also acknowledged that, sometime between November 6 and 10, 2014, he had gone to the petitioner's home to retrieve some paperwork that had been mixed in with the files he gave to the petitioner and that the topic of the petitioner fleeing the state was discussed again at that time. Fazzone testified that the petitioner "had mentioned . . . that he was intending maybe to just get out of town" and that he advised the petitioner "not to do that." He also testified that, while at the petitioner's apartment, he noticed that the petitioner was packing his belongings, and that the petitioner had told him that he was packing because he "wanted to be prepared" and "was just getting everything together, all of his belongings in the event that he had to do jail time . . . ." Fazzone also testified that he gave the petitioner an additional $100 at that time because the

petitioner had told him "[t]hat he had contacted several attorneys, but they wanted . . . more money than [the] $500 [that Fazzone had already given him]."

Fazzone also was questioned about prior deposition testimony he had given in a legal malpractice action that the petitioner had filed against him.[5] In that deposition, Fazzone was asked whether he " 'may have inadvertently' " led the petitioner to believe " 'that his absence from . . . court might be in his best interest . . . .' " Fazzone testified in the deposition: "Well, yeah, perhaps inadvertently because the money was given back to [the petitioner] after . . . he was discussing fleeing on his case. . . . [H]e was very upset. He was tired. I'd say even crying. I felt sympathy for him. So, I said I understand . . . you thinking that way, but I strongly advise you against it. So, is it possible? You know, maybe. . . . I said the police are going to be looking for you, your cell phone. They're going to be talking to your family members and your friends, and . . . they're very good at finding fugitives, particularly with these charges. So, maybe . . . inadvertently . . . but I did make it clear that I strongly advise against it."

The petitioner testified that, after the hearing on his motion to remove Fazzone as counsel, he met with Fazzone in the conference room at the courthouse. When the petitioner's habeas counsel asked the petitioner what he and Fazzone discussed during that meeting, however, the respondent's counsel objected on hearsay grounds. The following colloquy ensued:

"[The Respondent's Counsel]: Your Honor, I'm going to object. This is hearsay.

"[The Petitioner's Counsel]: . . . [F]irst of all, I think some of these things have already been said by [Fazzone]. Second, these are conversations between the

---

[5] The petitioner subsequently withdrew the legal malpractice action.

attorney and client . . . so that . . . [the petitioner] is explaining what he was discussing with his attorney. And this is . . . directly leading into the conversations about the advice regarding his flight.

"[The Respondent's Counsel]: It's still hearsay, Judge. He can ask him what his impression was after their conversations . . . .

"[The Petitioner's Counsel]: I think his impression without knowing what was said—

"The Court: You can ask him what his understanding was . . . or what he felt about the progress of the trial, [Fazzone's] performance, advice he was given.

"[The Petitioner's Counsel]: Yes, Your Honor. I can phrase it that way."

Thereafter, the petitioner's counsel conformed his questioning to the habeas court's ruling that he could ask the petitioner about his understanding of Fazzone's advice. Regarding the meeting with Fazzone in the conference room, the following colloquy occurred:

"[The Petitioner's Counsel]: . . . [C]oming back to the conversation in the conference room. You had a discussion with [Fazzone] about how the trial was going. Is that right?

"[The Petitioner]: Yes.

"[The Petitioner's Counsel]: Okay. How long was this conversation . . . ?

"[The Petitioner]: Probably a good half hour or so. . . . Or longer.

"[The Petitioner's Counsel]: After the conversation ended, what was your impression of what was happening in the case?

"[The Petitioner]: That it wasn't going well.

"[The Petitioner's Counsel]: Okay. Did you discuss any plans for your future representation?

"[The Petitioner]: Yes. . . .

"[The Petitioner's Counsel]: When you were discussing the plan for your future representation [Fazzone] gave you some advice. Is that right? . . .

"[The Petitioner]: Yes.

"[The Petitioner's Counsel]: . . . Okay. After he gave you that advice, what was the impression you were left with? Don't say exactly what he said, but what is it that you understood from that conversation?

"[The Petitioner]: My impression, what I understood from that conversation was that, when I left, the trial would stop, and that would give me a chance to get a new attorney to go back to it, but it would stop. . . . [T]here wouldn't be anything going on after that."

Regarding the conversation with Fazzone outside the courthouse, the following colloquy occurred:

"[The Petitioner's Counsel]: . . . Were you given advice during the conversation [outside the courthouse]?

"[The Petitioner]: Yes.

"[The Petitioner's Counsel]: All right. What was your impression of the advice you were given?

"[The Petitioner]: My impression was to leave, get the burner [phone], change the hair, and everything would stop."

Regarding the reason for Fazzone giving him $600 and a copy of the discovery from his file, the following colloquy occurred:

"[The Petitioner's Counsel]: . . . [W]hat is your understanding as to why he gave you the money?

"[The Petitioner]: Part of my understanding . . . of why he gave me the money, partly so I could have gas money just to go, to leave.

"[The Petitioner's Counsel]: Okay. And what is your understanding as to why he gave you the file?

"[The Petitioner]: It's my understanding he gave me the file because, when my trial stopped, I could give that file to the new attorney."

Regarding Fazzone's advice during the conversation at the petitioner's apartment, the following colloquy occurred:

"[The Petitioner's Counsel]: Did you have any further discussions about your case?

"[The Petitioner]: Yes.

"[The Petitioner's Counsel]: Okay. . . . [A]fter those discussions, what impressions were you left with about your case?

"[The Petitioner]: That it was a good idea that I left."

Finally, regarding the steps the petitioner took to avoid apprehension and his reasons for taking those steps, the following colloquy occurred:

"[The Petitioner's Counsel]: . . . Were you present [in court on Monday, November 10, 2014]?

"[The Petitioner]: No.

"[The Petitioner's Counsel]: Where were you?

"[The Petitioner]: Halfway across the United States.

"[The Petitioner's Counsel]: Okay. Were you eventually arrested for the case?

"[The Petitioner]: Yes. . . .

"[The Petitioner's Counsel]: Okay. Where were you arrested?

"[The Petitioner]: In Virginia. . . .

"[The Petitioner's Counsel]: All right. Had you done anything about your appearance?

"[The Petitioner]: Lost some weight, changed the hair.

"[The Petitioner's Counsel]: Why did you do those things?

"[The Petitioner]: I was told to."

On cross-examination, the petitioner was questioned further about Fazzone's alleged advice, the petitioner's reasons for fleeing the state, and what he thought would happen if he fled:

"[The Respondent's Counsel]: . . . So, it was your [impression] . . . that [Fazzone] told you to flee, take your file . . . go to California, earn some money, come back, hire a new attorney and fight these charges. Was that the plan?

"[The Petitioner]: The plan was that the trial was going to stop. . . . And I would be given a new trial where I could hire a new lawyer that could handle the case better because he was failing at it, and he was out of his depth. . . .

"[The Respondent's Counsel]: Okay. . . . [I]f the trial was going to stop, right, according to you, why were you then under the impression that you then would be able to hire a new attorney? Why weren't you just going to be dragged back to Connecticut and we were going to pick right up where we left off?

"[The Petitioner]: [Fazzone] told me, gave me the impression that if I left, under his advisement, that the trial would stop. Then it would be done. He would be out of it, and then I could get a new lawyer, and it would start all over again with somebody that's competent.

"[The Respondent's Counsel]: Okay. So, he didn't just tell you [that] you should flee. He had this whole plan that, for whatever reason, you couldn't show up [on] Monday with a new lawyer. But if you fled, then when you came back, we wouldn't just continue to proceed with trial . . . you would get a do-over. Right?

"[The Petitioner]: Essentially."

On redirect examination, the petitioner's counsel again asked the petitioner about his understanding of Fazzone's alleged advice:

"[The Petitioner's Counsel]: Can you tell the court what it is you understood the plan for leaving the state to be?

"[The Petitioner]: The plan that I understood to leave the state was just to leave to buy time to get an attorney and then court would stop, and then it would give me a chance to get an attorney and then it would start back over from square one.

"[The Petitioner's Counsel]: Okay. And who . . . did you have a discussion with [when] that plan came up?

"[The Petitioner]: [Fazzone]."

In his posttrial brief, the petitioner argued that Fazzone's alleged advice that the petitioner should flee the state to avoid further prosecution entitled him to a new trial under either the *Cronic* or *Strickland* standard. In its memorandum of decision, the habeas court first rejected the petitioner's claim under *Cronic*, finding that "[t]here is no credible evidence that . . . Fazzone told [the petitioner] to flee the jurisdiction." With respect to the petitioner's claim under *Strickland*, the court found that "the credible evidence establishes that . . . Fazzone did not tell [the petitioner] to flee the jurisdiction to obtain a delay in his trial" and that the petitioner "has not proven how the outcome of the trial

would have been different had he not fled the state
. . . .'' Accordingly, the court concluded that the peti-
tioner had failed to establish his entitlement to relief
under the *Cronic* or *Strickland* standard.

On November 9, 2023, while the present appeal was
pending, the petitioner filed a motion for rectification
and articulation. As relevant to this claim, the petitioner
argued that, by instructing the petitioner's counsel "to
only elicit the impressions that Fazzone's statements
gave to [the petitioner] . . . the court effectively sus-
tained the respondent's hearsay objection.'' (Citation
omitted.) The petitioner further argued that he "was
not offering Fazzone's statements for their truth, but
for the fact that they were made to him,'' and requested
that the court "articulate its ruling'' on the respondent's
hearsay objection. On December 1, 2023, the court
issued an order in which it articulated that it had sus-
tained the respondent's hearsay objection because, "[a]t
no time did [the petitioner's] habeas counsel explain
that the testimony sought was not for the truth of the
matter, as he now claims.'' The court further explained
that it had "permitted [the petitioner] to testify about
what his understanding of the conversation with . . .
Fazzone was. Typically, evidence that is hearsay, but
not offered for the truth of the matter, is offered to
show the impact on the listener or to explain any actions
taken by the listener. Here, the court permitted [the
petitioner] to testify—and he did—about his under-
standing of what . . . Fazzone said to him and what
that led him to do.''

A

We first address the petitioner's claim that the habeas
court erred in concluding that Fazzone did not render
ineffective assistance in connection with his alleged
advice regarding whether to flee the jurisdiction. In
support of that claim, the petitioner argues that "[t]he

undisputed evidence of Fazzone's conduct and 'winking' approval of [the petitioner's] flight [from the jurisdiction] was sufficient to prove" his claim under count one. We are not persuaded.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 205 Conn. App. 837, 856–57, 257 A.3d 343, cert. denied, 339 Conn. 905, 260 A.3d 484 (2021). Here, the petitioner challenges the court's factual finding that Fazzone did not advise him to flee. Specifically, he argues that, in making that finding, the court "overlook[ed] the glaring evidence of deficient performance by Fazzone," "failed to fairly assess the evidence," and "ignor[ed] substantial circumstantial evidence of Fazzone's failure to provide effective assistance of counsel . . . ." The petitioner further argues that his testimony concerning his understanding of Fazzone's advice constituted "undisputed evidence" that Fazzone led him to believe that it was in his best interest to flee.

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . [T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [habeas] [court's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of

the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, 230 Conn. App. 384, 399, 330 A.3d 134, cert. denied, 351 Conn. 921, 333 A.3d 103 (2025).

The habeas court's finding that Fazzone did not advise the petitioner to flee is well supported by the evidence. As the court noted in its memorandum of decision, "Fazzone testified that he did not, in any way, advise [the petitioner] to flee the trial and instead advised him not to do so . . . ." The petitioner does not dispute that the court accurately recounted Fazzone's testimony on that point but instead relies on other testimony that, he claims, undercuts the court's finding. Specifically, the petitioner argues that Fazzone's testimony that he gave the petitioner $600 and a portion of his file, advised the petitioner that the police would be able to track his cell phone, and saw that the petitioner was packing his belongings indicated that Fazzone was aware of and facilitated the petitioner's flight, and that the court erred by discounting that evidence. The petitioner also relies on his own testimony that he understood Fazzone's advice to be that it was in his best interest to flee and argues that Fazzone's deposition testimony supported the petitioner's understanding of that advice.

In making that argument, the petitioner essentially faults the habeas court for not construing the evidence in the light most favorable to him and improperly asks this court to reweigh the evidence in a manner that undermines the habeas court's conclusions. It is well established, however, that the habeas court, as the finder of fact, is "the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony. . . . It is the right of the trier of fact to draw reasonable and logical inferences from the facts that it finds to be proved." (Citations omitted.) *Tyson* v.

*Warden*, 24 Conn. App. 729, 737, 591 A.2d 817, cert. denied, 220 Conn. 909, 597 A.2d 340 (1991). "It is axiomatic that the fact finder is free to accept or reject any of the evidence it chooses, and it is not the role of this court to reassess or reweigh that evidence." *Roman* v. *Commissioner of Correction*, 223 Conn. App. 111, 123 n.7, 307 A.3d 934 (2023), cert. denied, 348 Conn. 952, 308 A.3d 1039 (2024). Thus, the court was free to weigh the competing testimony, assess the relative credibility of the witnesses, and determine which testimony it deemed to be credible.

Our review of the record indicates that the habeas court properly considered all of the testimony presented and that its factual findings were supported by the evidence. Fazzone testified that he gave the petitioner $600 not to assist in his flight, but for the petitioner to put that money toward a retainer for a new attorney. Although the petitioner contends that Fazzone "[gave] his entire file to [the petitioner] . . . [which] demonstrated that he did not expect to continue trying the case," Fazzone testified that he gave the petitioner only a copy of the discovery "in the event that he wanted to meet with another attorney . . . ." Moreover, although Fazzone testified in his deposition that the petitioner may have inadvertently interpreted Fazzone's advice to mean that it was in his best interest to flee, Fazzone also testified in no uncertain terms that he "did make it clear that [he] strongly advise[d] against it." The court's factual findings regarding Fazzone's advice to the petitioner were supported by the evidence, and we are not left with a definite and firm conviction that the court made a mistake in reaching those findings. Accordingly, we conclude that the court did not err in its conclusion that the petitioner failed to establish his claim under count one of the amended petition.

B

We next address the petitioner's claim that the habeas court violated his right to due process by precluding

him, on hearsay grounds, from testifying as to the substance of Fazzone's alleged advice that he flee the jurisdiction to avoid further prosecution. The petitioner argues that the court's hearsay ruling was erroneous because his testimony about Fazzone's advice was not offered to prove that the statements contained therein were true but, rather, to prove that Fazzone advised him to flee and that he fled on the basis of that advice. The petitioner argues that we should reverse the judgment as to count one and remand the matter for a new trial, at which he would be permitted to testify as to Fazzone's alleged advice. The respondent argues, inter alia, that the petitioner has not established that the court's hearsay ruling violated his right to due process.[6] We agree with the respondent.

The petitioner does not claim that he preserved his due process claim at trial but, rather, seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[7] "[T]his court is not

---

[6] The respondent also argues that the petitioner waived his due process claim by "acquiesc[ing]" to the habeas court's hearsay ruling or, in the alternative, that he failed to brief that claim adequately. Because we conclude that the petitioner cannot prevail on the merits of his claim, we need not address these arguments.

[7] In his principal brief to this court, the petitioner also asserts, in passing, that his claim is reviewable under the plain error doctrine. See Practice Book § 60-5. The only reference to the plain error rule in the petitioner's brief, however, is contained in a single sentence, which states in its entirety: "This claim is also reviewable despite habeas counsel's failure to preserve it, as it involves a violation of the petitioner's constitutional right to due process and to testify on his own behalf, and meets the criteria set out in [*Golding*] or the plain error doctrine." The petitioner's brief does not set forth the standard of review for determining whether a claim satisfies the plain error doctrine or explain why the alleged error in the present case warrants reversal under that doctrine.

"[W]e will not review an underlying claim for plain error unless the request for relief under that doctrine has been adequately briefed. . . . A party claiming plain error must engage in a separate analysis under that doctrine to demonstrate that plain error has occurred under the circumstances of [the] case. . . . Indeed, a mere conclusory assertion of plain error is insufficient to allow this court to reach the merits of an unpreserved claim under

required to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . It is well established, however, that an unpreserved claim is reviewable under *Golding* when (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [petitioner] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Turner*, 334 Conn. 660, 673, 224 A.3d 129 (2020). "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the [appellant] may prevail; (internal quotation marks omitted) *State* v. *Gray*, 342 Conn. 657, 668, 271 A.3d 101 (2022); and the party seeking review under *Golding* "bear[s] the burden of establishing their entitlement to such review . . . ." (Internal quotation marks omitted.) *State* v. *Beaulieu*, 118 Conn. App. 1, 7, 982 A.2d 245, cert. denied, 294 Conn. 921, 984 A.2d 68 (2009). "We are free to respond to the [petitioner's] claim by focusing on whichever *Golding* prong is most relevant, as the inability to meet any one prong requires a determination that the [petitioner's] claim must fail." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 226 Conn. App. 617, 634, 319 A.3d 242, cert. denied, 350 Conn. 912, 324 A.3d 143 (2024).

It is well established that, as a general matter, a party "cannot raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by

that doctrine." (Internal quotation marks omitted.) *State* v. *Carlson*, 226 Conn. App. 514, 540, 318 A.3d 283, cert. denied, 350 Conn. 911, 324 A.3d 143 (2024). Because the petitioner has not provided any analysis to support his claim that reversal is warranted under the plain error doctrine, we conclude that his claim is inadequately briefed and, therefore, decline to review it.

asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right. . . . Thus, [o]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily [rejected]." (Internal quotation marks omitted.) *In re A. H.*, 226 Conn. App. 1, 27, 317 A.3d 197, cert. denied, 349 Conn. 918, 317 A.3d 784 (2024). "Nevertheless, [our Supreme Court] has recognized that an unpreserved evidentiary claim may be constitutional in nature if there is a resultant denial of fundamental fairness or the denial of a specific constitutional right . . . ." (Internal quotation marks omitted.) *State* v. *Turner*, supra, 334 Conn. 674. "This is consistent with federal jurisprudence, which recognizes that an evidentiary error may be of constitutional magnitude if the error was so pervasive as to have denied [the petitioner] a fundamentally fair trial . . . ." (Internal quotation marks omitted.) Id. An evidentiary error rises to the level of a due process violation only if it "was so crucial, critical, and highly significant that [the petitioner] was denied a fair trial." *State* v. *Waters*, 214 Conn. App. 294, 314–15, 280 A.3d 601, cert. denied, 345 Conn. 914, 284 A.3d 25 (2022).

In the present case, the petitioner's due process claim is premised on an alleged evidentiary error, namely, that the habeas court's hearsay ruling was erroneous because his testimony as to Fazzone's advice was offered not to prove that what Fazzone told him was true but to establish his claim that Fazzone improperly advised him that it was in his best interest to flee. He contends that, although premised on evidentiary error, this is not "a mere 'evidentiary' claim" and that "[t]he habeas court's hearsay ruling deprived [him] of the right to offer evidence that was central to his [case] and as such is an error of constitutional magnitude." The petitioner further argues that "[t]his loss of the opportunity to prove his claims by reporting what was said to

him by . . . Fazzone cost him a fair habeas trial." We agree with the petitioner that his proffered testimony about Fazzone's advice to him was not hearsay because it was not offered to prove the truth of Fazzone's out-of-court statements. We nevertheless conclude that the court's exclusion of that evidence did not violate the petitioner's right to due process.

" 'Hearsay' means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." Conn. Code Evid. § 8-1 (3). "If . . . a statement . . . is offered for a purpose other than establishing the truth of the matters contained in the statement, it is not hearsay." (Internal quotation marks omitted.) *Hardison* v. *Commissioner of Correction*, 152 Conn. App. 410, 422, 98 A.3d 873 (2014). "The test is whether the statement is offered to prove the truth of the matters in the statement. If it is, it is hearsay; if offered for some other purpose, it is not hearsay." E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 8.1.2, p. 496. Additionally, to be admissible, the statement must be relevant to the nonhearsay purpose for which it is offered. See, e.g., *State* v. *Perkins*, 271 Conn. 218, 256, 856 A.2d 917 (2004). Thus, "if a conversation is sought to be admitted not for the truth of its content but to establish that such a conversation took place, it is not hearsay"; E. Prescott, supra, § 8.6, p. 511; but to be admissible, "the offeror [must] establish that the mere fact that the conversation itself took place is relevant to the case." Id.

In the present case, Fazzone's alleged advice was admissible nonhearsay because it was offered to prove the nature of the advice and the effect it had on the petitioner, not to prove that the statements Fazzone made during the conversation were actually true. In count one of the amended petition, the petitioner alleged that Fazzone improperly advised him that, if he

fled the state, the trial would stop and he would have an opportunity to hire a new attorney to represent him at a new trial, and that he fled the state in reliance on Fazzone's advice. Thus, the petitioner was not seeking to prove that Fazzone's alleged statements to him about what would happen if he fled were true. He was not seeking to prove, for instance, that, if he fled, the trial would stop and he would have the opportunity to hire another attorney; to the contrary, the petitioner's claim rests on the premise that Fazzone's advice was so misguided that no reasonably competent attorney would have provided that advice. Consequently, the petitioner's testimony about what Fazzone said to him was relevant to a nonhearsay purpose because, to prevail on the claim alleged in count one, the petitioner was required to prove that Fazzone gave him the alleged advice and that he fled the state in reliance on it, not that Fazzone's out-of-court statements to him about what would happen if he fled were true. See id., § 8.8.1, pp. 513–14 ("[w]hen the issue is whether a party acted on advice of his or her attorney, the party is entitled to show what that advice was"); see also, e.g., *Hardison* v. *Commissioner of Correction*, supra, 152 Conn. App. 422 (where petitioner alleged that counsel was ineffective in failing to advise about mandatory minimum sentence, testimony about counsel's advice was not hearsay because "that testimony was relevant to show that the statements were made, not that the statements made were true"). Accordingly, testimony about Fazzone's alleged advice was admissible nonhearsay, and the court should have permitted the petitioner to testify as to the substance of that advice. See, e.g., *United States* v. *Scully*, 877 F.3d 464, 474 (2d Cir. 2017) (where defendant claimed he acted on advice of counsel, court erred by precluding defendant's testimony about that advice; proffered testimony was not hearsay and defendant was entitled to testify as to substance of counsel's advice).

Our review of the entire record, however, convinces us that the habeas court's ruling was not "so crucial, critical, and highly significant that [the petitioner] was denied a fair trial." *State* v. *Waters*, supra, 214 Conn. App. 314–15. We reiterate that the petitioner claims only that the court's hearsay ruling deprived him of his right to due process. In considering that claim, our inquiry is not focused on the question of whether the court's evidentiary ruling was erroneous, but on whether the petitioner established that "the erroneous exclusion of evidence was so prejudicial to the rights of the [petitioner] as to deprive him of a fair trial." (Internal quotation marks omitted.) *State* v. *Finley*, 34 Conn. App. 823, 830, 644 A.2d 371, cert. denied, 231 Conn. 927, 648 A.2d 880 (1994).

Despite the habeas court's initial ruling that the petitioner could not testify as to the substance of what Fazzone had said to him, the record indicates that the petitioner testified at length regarding his understanding of Fazzone's advice and why he allegedly believed, on the basis of that advice, that it was in his best interest to flee. For example, the petitioner testified that, "what I understood from [the] conversation [with Fazzone in the courthouse conference room] was that, when I left, the trial would stop, and that would give me a chance to get a new attorney . . . ." Regarding Fazzone's giving the petitioner $600 and a copy of the discovery from his file, the petitioner testified that Fazzone "gave me the money partly so I could have gas money just to . . . leave" and "gave me the file because, when my trial stopped, I could give that file to the new attorney." On cross-examination, the petitioner further explained: "*Fazzone told me*, gave me the impression that, if I left *under his advisement*, that the trial would stop. Then it would be done. He would get out of it, and then I could get a new lawyer and it would start all over again with somebody that's competent." (Emphasis added.)

Subsequently, the petitioner expressly testified that Fazzone came up with the plan for the petitioner "to leave the state . . . to buy time to get an attorney and then court would stop, and then it would give me a chance to get an attorney and then it would start back over from square one." The petitioner further testified that, on the basis of his conversation with Fazzone on the courthouse steps, his impression was that he should "leave, get the burner [phone], change the hair, and [that] everything would stop." When asked why he lost weight and changed his hair color after fleeing, the petitioner testified that he did those things because "I was told to."

Thus, contrary to the petitioner's contention, the habeas court did not deprive the petitioner of the opportunity to prove his claims. Although the court initially instructed the petitioner that he could testify only as to his understanding of Fazzone's advice, the petitioner ultimately testified that Fazzone came up with the plan for him to flee; that Fazzone told him that, if he fled, the trial would stop and he would be able to retain a new lawyer to represent him at a new trial; that Fazzone told him to get a burner phone and change his hair color; that Fazzone gave him $600 to aid in his flight; and that Fazzone gave him his file so that he could give it to a new attorney. Accordingly, despite the court's initial ruling, the petitioner did testify as to the general substance of Fazzone's advice, even if he was not permitted to recount the exact words that Fazzone used. Perhaps more importantly, the petitioner testified repeatedly and in detail as to his understanding of Fazzone's advice and what actions he took on the basis of that understanding. The court's memorandum of decision indicates that the court considered all of the testimony, found Fazzone's version of events to be credible and, on the basis of its credibility assessment, concluded that the petitioner had failed to prove his claim.

In light of the entire record, we cannot conclude that the court's hearsay ruling was so fundamentally unfair that it deprived the petitioner of a fair trial.

## II

We next address the petitioner's claim that the habeas court erred by failing to consider certain evidence that, the petitioner contends, supported his claim in count two of his amended petition that Fazzone rendered ineffective assistance in connection with his trial performance. Specifically, the petitioner contends that the court failed to consider "Fazzone's theory in [cross-examining] the state's expert on his idea that clitoral contact is not 'penetration' " within the meaning of the sexual assault statutes and "ignored the significant damage that Fazzone did to the defense by offering the [victim's] statement into evidence." The respondent contends that the petitioner's claim is not reviewable because these specific allegations of deficient performance were not alleged in the habeas petition or presented to the habeas court and, in the alternative, that the petitioner failed to prove that he was prejudiced by the alleged deficient performance. We conclude that, even if we assume that the petitioner properly presented these allegations to the habeas court, he cannot prevail on the merits of his claim.

The following facts and procedural history are relevant to this claim. As indicated previously, the state charged the petitioner with, inter alia, sexual assault in the first degree in violation of § 53a-70 (a) (2) and sexual assault in the second degree in violation of § 53a-71 (a) (1). Both statutes require the state to prove, inter alia, that the petitioner "engage[d] in sexual intercourse with another person . . . ."[8] General Statutes § 53a-65

_____

[8] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

(2) provides in relevant part that " '[s]exual intercourse' means vaginal intercourse . . . between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse . . . ."

At trial, the victim testified that the petitioner's sexual abuse of her started when he began removing her bra and massaging her back, and then progressed each time until eventually he rubbed her clitoris with his fingers. To support the allegation that the petitioner had engaged in sexual intercourse with the victim within the meaning of § 53a-65 (2), the state called Erica Kesselman, a physician with Day Kimball Healthcare, as an expert in the field of pediatric sexual assault examinations and pediatric female genitalia. On direct examination, Kesselman testified, inter alia, that the labia majora is considered the genital opening and that "[a]nything inside the labia majora is internal." She further testified that the clitoris is within the genital opening and that a person would have to penetrate the labia majora to touch the clitoris. On cross-examination, Fazzone challenged Kesselman about that aspect of her testimony, questioning whether "there's [any] way that . . . the clitoris . . . [can] be external at all in any way from the vagina" and whether "you can see the clitoris without having to do any type of penetration . . . ." Kesselman reiterated that the clitoris is internal and that a person could not touch it without penetrating the labia majora.

Subsequently, the state called C, the victim's former boyfriend, who testified on direct examination that the

We note that § 53a-70 has been amended by the legislature since the events underlying the present case. See Public Acts 2015, No. 15-211, § 16. This amendment, however, has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than three years older than such other person . . . ."

victim had called him on the phone and told him that the petitioner had "play[ed] with her breasts and fingered her." He further testified that the victim had made him promise not to tell anyone, but that eventually, after the victim reported the allegations, he told the police. On cross-examination, however, C acknowledged that he had told the police that the victim did not call him to tell him about the allegations. Rather, he told the police that the victim's sister, B, had sent him a text message saying that the victim was hiding something and that the victim told him about the allegations after he called her to ask about B's text message. Thereafter, Fazzone sought to admit into evidence the victim's sworn statement to the police for the purpose of establishing an alleged inconsistency between that statement and C's testimony. Specifically, Fazzone explained to the court, outside of the jury's presence, that the victim's statement indicated that "she never told [B] about this incident," but C had testified that he "initially heard about this evidence from a text message from [B]. But if [the victim] never told [B], then how can [B] tell [C]?" The trial court responded: "My only concern is that by putting the statement in as a full exhibit . . . you're putting in another layer of corroboration of the victim's testimony for the jury to read in the jury deliberation room. . . . I mean, that's up to you. It's a strategic call, but it's a risky call." Fazzone then inquired whether the court could admit only the portion of the victim's statement that was relevant to show the alleged inconsistency, to which the prosecutor objected. After conferring with the petitioner, Fazzone indicated that he intended to offer the entire statement as a full exhibit, which the court admitted without any objection from the prosecutor.

After the jury returned to the courtroom, Fazzone resumed his cross-examination of C:

"[Fazzone]: Okay. So, just to . . . clarify for the jury, so, it's fair to say that you're testifying that [B] had texted you about the incident, but then later [the victim] told you about it?

"[C]: I guess, yeah.

"[Fazzone]: Okay. . . . And then, Your Honor, this is marked as a full exhibit from the Plainfield Police Department. It is a statement from [the victim]. And I believe now that, because it's been offered in, Your Honor, I may read directly from the document?

"The Court: Yes.

"[Fazzone]: [The victim] states in quotes: 'I never told [B] about what [the petitioner] did to me.' And this document is dated [November 6, 2012]. So, with that said . . . isn't it fair to say that, if [the victim] never told [B] about what happened, then it would be impossible for [B] to text you?"

The prosecutor objected to Fazzone's question, and the court sustained the objection.

During the habeas trial, when the petitioner's counsel asked Fazzone why he cross-examined Kesselman about whether clitoral contact required penetration, Fazzone responded: "I don't know how it would relate to the defense. It was just—it was an allegation made by the prosecution, so." Regarding his decision to have the trial court admit the victim's statement into evidence as a full exhibit, Fazzone testified that he did not recall the strategy behind that decision but acknowledged that the trial court had described it as a "risky move because it added a layer of corroboration" to the victim's testimony. The petitioner did not introduce the victim's statement into evidence at the habeas trial.

In the portion of his posttrial brief addressing count two of his amended petition, the petitioner first argued

that Fazzone's trial performance was so poor that prejudice should be presumed under *Cronic* because, "[w]hatever Fazzone was doing at trial, it was not putting the state's case through any meaningful adversarial testing." In support of that claim, the petitioner recounted a litany of alleged deficiencies in Fazzone's conduct of the trial, including that he "failed to properly introduce evidence, such as witness testimony, by failing to adequately cross-examine the [victim] and her father and then failing to adequately establish why he should be allowed to re-call them"; that "he sought to bolster the state's case by allowing the jury to read the [victim's] statement and the arrest warrant affidavit" (emphasis omitted); that "[h]e sought to challenge well settled law in a manner inconsistent with his defense theory by trying to litigate the definition of 'penetration' "; that "[h]e failed to object to various instances of domestic violence with the [victim's] mother and, in several instances, elicited that evidence"; and that "[h]e never entertained consulting an expert to determine whether [the state's expert] was correct and how to challenge her broad statements that disclosure is often delayed, violence usually causes complainants' silence, or that teens typically delay truthful disclosures." The petitioner argued that Fazzone's "trial conduct constituted a total failure of representation for which prejudice should be presumed" under *Cronic*.

In the alternative, the petitioner claimed that Fazzone's conduct during the trial constituted ineffective assistance under the *Strickland* standard. With respect to the deficient performance prong of *Strickland*, the petitioner incorporated by reference the portion of his brief addressing his *Cronic* claim, arguing that "[t]he above *Cronic* analysis is essentially why, under *Strickland*, Fazzone rendered deficient performance." With respect to the prejudice prong of *Strickland*, the petitioner argued in full: "[The petitioner] essentially had

no defense even though Fazzone came up with a theory. His failure to preclude objectionable evidence and his inexplicable proclivity for *introducing* objectional and prejudicial evidence *against* [the petitioner] wholly undermined his defense. His lack of knowledge with the law governing these types of cases, his unpreparedness to face an expert witness, and his glaring inexperience with trial litigation all prevented him from getting his point across: that the witnesses had reasons to make this all up. As a result, [the petitioner] did not get the benefit of a competent and coherent defense at trial. Therefore, it must be said that the outcome of the trial, had Fazzone been able to present the defense effectively, would likely have been different." (Emphasis added.) Although the petitioner had referenced Fazzone's cross-examination of Kesselman and his introduction of the victim's statement in the *Cronic* portion of his posttrial brief (which he incorporated by reference in his argument that Fazzone's performance was deficient under *Strickland*), he did not present any specific argument explaining how those decisions by Fazzone would have impacted the jury's verdict.

In its memorandum of decision, the habeas court rejected the petitioner's *Cronic* and *Strickland* claims under count two of the petition. With respect to the *Cronic* claim, the court found that "Fazzone did not entirely fail to subject the prosecution's case to meaningful adversarial testing, nor did he completely fail to advocate for [the petitioner]. He was acting as a lawyer, and his performance did not constitute 'no representation at all.' . . . There is . . . ample evidence that . . . Fazzone performed as an attorney at trial: he had a coherent theory of defense, he cross-examined witnesses, he made objections and he argued that theory of the defense to the jury. To the extent that there is a *Cronic* claim, it is denied because . . . Fazzone did

act as counsel for [the petitioner] and subjected the state's case to adversarial testing."

With respect to the *Strickland* claim, the habeas court focused on the prejudice prong, finding that, "even if . . . Fazzone is assumed to have performed deficiently . . . [the petitioner] has not proven prejudice. He has not proven how the outcome of the trial would have been different . . . had . . . Fazzone objected to certain evidence or consulted with an expert. The state's case rested almost wholly on the testimony of the [victim]. She testified—and the jury believed her—that [the petitioner] sexually assaulted her on numerous occasions. Her testimony was corroborated in part by a third-party witness who walked in on [the petitioner] in bed with her." The court concluded that "[the petitioner's] general allegations—failure to properly investigate or failure to properly introduce evidence—are denied as lacking proof. [The petitioner] did not present any evidence of what an investigation would have uncovered and has not pointed to specific pieces of evidence that would have been excluded or what the impact of that was on the jury. He has also not presented any expert testimony at the habeas trial. Thus, all of his claims are denied as lacking proof. There is also no reasonable likelihood that the outcome of the trial would have been different."

In his motion for rectification and articulation, the petitioner requested that the habeas court "revise its [memorandum of decision] to state that [the] issue [pertaining to Fazzone's introduction of the victim's statement to the police] was raised in his [amended petition]."[9] The court denied that request, stating that "a

---

[9] In its memorandum of decision, the habeas court, in recounting Fazzone's testimony, stated that Fazzone had "attempted to introduce the victim's statement to the police as evidence." In his motion for rectification and articulation, the petitioner requested that the court clarify that Fazzone in fact had introduced the statement into evidence, as opposed to merely attempting to introduce it. In its articulation order, the court clarified that the portion of the memorandum of decision in question "was meant to be

reading of the amended petition does not support [the] position" that the petitioner had "raised a challenge to the introduction of the victim's statement at trial." The court then quoted from the portion of count two of the amended petition in which the petitioner had identified Fazzone's alleged instances of deficient performance and found that "the claim that . . . Fazzone was ineffective for introducing the victim's statement at trial . . . is not encompassed among those listed above. Thus, the court did not consider it or mention it."

On appeal, in challenging the habeas court's alleged failure to consider evidence concerning Fazzone's cross-examination of Kesselman and introduction into evidence of the victim's statement to the police, the petitioner does not argue that this evidence would have impacted the court's conclusion that he had failed to prove his *Cronic* claim. Instead, the petitioner focuses on the court's conclusion that he was not prejudiced by Fazzone's deficient performance, arguing that the court's conclusion that he "did not prove how the outcome would have been different . . . does [not] properly account for the effect of Fazzone's failures . . . ." The petitioner contends that Fazzone's "theory . . . that clitoral contact is not 'penetration' " was "misguided legally" and "rejected long ago" by our Supreme Court in *State* v. *Merriam*, 264 Conn. 617, 630, 835 A.2d 895 (2003).[10] He further contends that Fazzone's cross-examination of Kesselman "amounted to an admission of clitoral contact—that is, guilt on [the sexual assault counts] of the complaint," and "gave the state an opportunity to graphically explain the anatomy of sexual penetration and the manner in which it could be effected—

a recitation of . . . Fazzone's testimony at the habeas trial. . . . To the extent that the court's recitation created an ambiguity, the court hereby articulates that the statement was, in fact, admitted as an exhibit at the criminal trial."

[10] In *Merriam*, the court held that "the penetration element of [the sexual assault] statutes is satisfied by the penetration of the labia majora . . . ." *State* v. *Merriam*, supra, 264 Conn. 630.

with extremely prejudicial effect on the defense." The petitioner also argues that Fazzone's decision to introduce the victim's statement as a full exhibit "offered no benefit to the defense and bolstered the state's case" because it "corroborated the [victim's] testimony with compelling details for the jury's sustained focus in the deliberation room." He further argues that the "harmful effect [of the victim's statement] was underscored by the state's repeated reference to it in the prosecutor's closing argument."

As discussed previously, to prevail on an ineffective assistance of counsel claim under the *Strickland* standard, a petitioner must prove both that counsel's performance was deficient and that it resulted in prejudice to the petitioner, and "[a] court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." (Internal quotation marks omitted.) *Figueroa* v. *Commissioner of Correction*, 202 Conn. App. 54, 64, 244 A.3d 149, cert. denied, 336 Conn. 926, 246 A.3d 986 (2021). "An evaluation of the prejudice prong involves a consideration of whether there is a reasonable probability that, absent the errors, the [fact finder] would have had a reasonable doubt respecting guilt. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . We do not conduct this inquiry in a vacuum, rather, we must consider the totality of the evidence before the judge or jury." (Internal quotation marks omitted.) *Hilton* v. *Commissioner of Correction*, 225 Conn. App. 309, 327, 315 A.3d 1135 (2024), cert. granted, 351 Conn. 916, 332 A.3d 293 (2025). Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable. . . . Notably, the petitioner must meet this burden not by use of speculation but by demonstrable realities." (Internal quotation marks omitted.) Id., 328. "[O]ur review of whether the facts

as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Figueroa* v. *Commissioner of Correction,* supra, 63.

In the present case, the record does not support the petitioner's claims concerning Fazzone's cross-examination of Kesselman and introduction into evidence of the victim's statement to the police. With respect to the cross-examination of Kesselman, we begin by observing that nothing in the transcript supports the petitioner's contention that Fazzone's questioning on that point "amounted to an admission of clitoral contact . . . ." The trial transcript reveals that Fazzone repeatedly attempted to challenge Kesselman's testimony that the clitoris is internal and could not be touched without penetrating the labia majora, but nothing about that questioning even hinted at a concession that the petitioner had engaged in the alleged conduct.

The petitioner's argument that Fazzone's cross-examination of Kesselman "gave the state an opportunity to graphically explain the anatomy of sexual penetration and the manner in which it could be effected" also is not supported by the record. As the party bearing the burden of proof, the state was required to present evidence to support each element of the charged offenses, including that the petitioner had engaged in sexual intercourse with the victim. See, e.g., *State* v. *Sullivan,* 351 Conn. 798, 815–16, 334 A.3d 446 (2025) ("[i]t is axiomatic that the state [bears the burden of proving] all the essential elements of the crimes charged beyond a reasonable doubt in order to obtain a conviction" (internal quotation marks omitted)). Thus, Fazzone's cross-examination did not open the door to the state's introduction of evidence to establish that clitoral touching constitutes penetration; rather, the state was required to present that evidence to establish the penetration element of

the sexual assault charges. In fact, the trial transcript reveals that the state elicited all of the relevant testimony from Kesselman during its direct examination and did not ask any further questions after Fazzone's cross-examination. The petitioner did not present any testimony to support his claim that, but for Fazzone's cross-examination, the state would not have so "graphically explain[ed]" why the petitioner's touching of the victim's clitoris satisfied the penetration element of the sexual assault charges. Accordingly, we reject the petitioner's claim that the habeas court erred in concluding that the petitioner had failed to establish prejudice with respect to his claim of ineffective assistance concerning Fazzone's cross-examination of Kesselman.

The same is true with respect to Fazzone's introduction into evidence of the victim's statement to the police. First, we note that the petitioner did not offer the victim's statement as an exhibit or otherwise introduce the contents of the statement into evidence at the habeas trial. Without the statement in evidence, there is no basis in the record to support the petitioner's claim that the content of that statement was so prejudicial that it impacted the jury's verdict.

Moreover, the record does not support the petitioner's argument that the prosecutor made "repeated reference" to the victim's statement during closing argument in a way that was unduly prejudicial to the petitioner. Rather, the trial transcript reveals that the prosecutor referred to the victim's statement only twice during closing argument. First, in arguing that the jury should find that the petitioner had abused the victim when she was older than thirteen but younger than sixteen years of age, as required to find him guilty of sexual assault in the second degree; see footnote 8 of this opinion; the prosecutor referred to the date on which the victim

gave her statement to the police.[11] Second, during his closing argument, Fazzone argued that the jury should disbelieve the victim because, contrary to her trial testimony, she had reported only one instance of alleged abuse in her statement to the police. The prosecutor responded during rebuttal argument that the jury should consider "the context in which [the victim] gave this statement" and referenced the victim's trial testimony in which she explained that, when she gave the statement, "[her] dad was in the room, and [she] was really embarrassed and . . . didn't really want him to be there." These references do not support the petitioner's argument that the state relied heavily on the victim's statement in support of its case. Accordingly, we conclude that the court did not err in its determination that the petitioner failed to establish prejudice under the *Strickland* standard.[12]

[11] In his reply brief, the petitioner argues that there was insufficient evidence that he sexually assaulted the victim after she became thirteen years old and that Fazzone's failure to move for a judgment of acquittal of sexual assault in the second degree is "another example of Fazzone's deficient performance . . . ." We decline to address the merits of that claim because "[i]t is . . . a well established principle that [claims] cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Dearing* v. *Commissioner of Correction*, 230 Conn. App. 145, 168 n.9, 329 A.3d 988, cert. denied, 351 Conn. 910, 331 A.3d 158 (2025). We note, however, that the petitioner raised an identical claim in his direct appeal, which was rejected on its merits because "there was sufficient evidence . . . that the defendant's abuse continued until after the victim turned thirteen, as required to sustain the defendant's conviction for sexual assault in the second degree . . . ." *State* v. *Wright*, supra, 235 Conn. App. 154.

[12] The petitioner also argues, in connection with his challenge to the habeas court's rejection of count two of his amended petition, that the court erred by not considering certain instances of alleged false testimony by Fazzone during the habeas trial in assessing his credibility. Specifically, he argues that "Fazzone falsely asserted that Judge Swords had warned [the petitioner] of the implications if he failed to appear," when, "[i]n fact, Judge Swords made no such admonition." The petitioner argues that "Fazzone clearly demonstrated a willingness to lie in court" and that the habeas court "plainly erred in failing to take into account this pattern of deception."

It is well established that, "[i]n a habeas trial, the court is the trier of fact and, thus, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony . . . . It is simply not the role of this court

## III

Finally, the petitioner raises three claims pertaining to the habeas court's alleged failure to address certain of his allegations that, he maintains, were raised in his amended habeas petition and presented to the court in his posttrial brief. First, the petitioner asserts that the court failed to address two separate but related claims pertaining to Fazzone's statements and actions after the petitioner failed to appear in court when trial resumed on November 10, 2014.[13] Second, the petitioner asserts that the court failed to address whether Fazzone rendered ineffective assistance during the petitioner's sentencing proceeding. We decline to review these claims because the petitioner failed to present them to the habeas court.

We begin by setting forth the legal principles and standard of review applicable to these claims. "The petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a [petitioner] may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a [petitioner] to recover is limited to the allegations

on appeal to second-guess credibility determinations made by the habeas court." (Internal quotation marks omitted.) *Hilton* v. *Commissioner of Correction*, supra, 225 Conn. App. 340. Moreover, as discussed previously, the habeas court rejected count two of the amended petition on the ground that the petitioner had failed to prove that he was prejudiced by Fazzone's allegedly deficient performance. That conclusion rested not on the court's assessment of Fazzone's credibility but on its determination that the petitioner failed to present evidence to support his claim that Fazzone's performance affected the outcome of the trial. The petitioner's brief does not explain how the court's credibility determination affected its resolution of count two of the amended petition. Accordingly, we reject that aspect of the petitioner's claim.

[13] Although the petitioner raises these as two separate claims of error in his principal appellate brief, we address them together because they involve overlapping factual issues, and our resolution of them requires application of an identical standard of review.

of his complaint." (Citation omitted; internal quotation marks omitted.) *Cole* v. *Commissioner of Correction*, 102 Conn. App. 595, 599, 925 A.2d 1231, cert. denied, 284 Conn. 924, 933 A.2d 723 (2007). Moreover, "[i]t is axiomatic that a party cannot submit a case to the trial court on one theory and then seek a reversal in the reviewing court on another. A party is not entitled to raise issues on appeal that have not been raised in the trial court." (Internal quotation marks omitted.) *Alexander* v. *Commissioner of Correction*, 103 Conn. App. 629, 640, 930 A.2d 58, cert. denied, 284 Conn. 939, 937 A.2d 695 (2007). "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the [habeas] court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, 197 Conn. App. 597, 607, 232 A.3d 63 (2020), appeal dismissed, 341 Conn. 506, 267 A.3d 193 (2021).

A

The petitioner first contends that "on the morning of November [10, 2014] when [the petitioner] failed to appear for the resumption of trial . . . [Fazzone made] false statements to Judge Swords concealing his contacts with [the petitioner] and his role in [the petitioner's] failure to appear." He claims that Fazzone's alleged "concealment of his role in [the petitioner's] failure to appear" constituted ineffective assistance of counsel and/or a conflict of interest, and that the habeas court erred in failing to address those claims.

The following additional facts and procedural history are relevant to this claim. As discussed previously, on Thursday, November 6, 2014, after the petitioner moved to dismiss Fazzone as his counsel, the trial court continued the case until Monday, November 10. Fazzone testified at the habeas trial that he met with the petitioner on November 6 after court adjourned and again at the

petitioner's apartment at some point during the weekend. When the petitioner did not appear in court on November 10, the court asked Fazzone if he knew the petitioner's whereabouts, to which Fazzone responded: "I saw [the petitioner] on Friday. I spoke with him, and he made it clear to me that he wanted to consult other counsel. So, I said, 'well, I'll be in touch with you.' And I called him a couple of times last night; I was not able to get in touch with him." The court adjourned for approximately twenty minutes to allow the petitioner additional time to appear and to permit Fazzone to attempt to contact him.

When court reconvened, the court asked Fazzone if he "ha[d] anything to report" regarding the petitioner's whereabouts, to which Fazzone responded: "Yes, Your Honor. . . . I attempted to call [the petitioner] on his cell phone, and it went to voicemail . . . and I left him a message, explained to him that he has to be here immediately. I have not been able to contact him." Fazzone then orally moved for a mistrial, stating that he "would not want the jury to see [the petitioner's] absence as any indication of guilt in any way." The court denied the motion and adjourned for another twenty minutes to afford the petitioner a final opportunity to appear.

When court reconvened again and the petitioner still had not appeared, the court asked Fazzone if he had "heard from the [petitioner] since the last time we were on the record," to which Fazzone responded: "I did again attempt to locate [the petitioner], or to . . . get in touch with him by way of cell phone, and I have not heard from him." The court then recounted that, on November 6, 2014, after the petitioner had moved to dismiss Fazzone as counsel, it had continued the matter and instructed the parties that court would reconvene on November 10 for further consideration of the petitioner's motion. The court then asked Fazzone whether

it "[w]ould . . . be a fair statement" to say that Fazzone had "tried to get ahold of the petitioner over the weekend." Fazzone responded: "Yes, Your Honor, I did. Just again for the record, I spoke with [the petitioner] on Friday, and he had made it clear to me that he wanted to consult with other counsel. Then I called him last evening because I had not heard back from him and . . . it went straight to voicemail, Your Honor. And I attempted to call him twice today." The court found that the petitioner had "intentionally absented himself in an effort to thwart the proceedings in this matter and has waived, therefore, his right to be present."

In count two of his amended habeas petition, the petitioner alleged that Fazzone's trial performance was deficient in various ways, none of which relate to Fazzone's alleged performance at the hearing on November 10, 2014, or his statements to the trial court during that hearing.[14] As discussed previously, in his posttrial brief, the petitioner claimed that Fazzone's trial performance constituted ineffective assistance under either *Cronic* or *Strickland* and identified various actions and/or inactions by Fazzone that, he claimed, supported the ineffective assistance of counsel claim. The petitioner did not reference the November 10 hearing in his posttrial brief or argue that Fazzone was ineffective for allegedly lying to the court about his role in or knowledge of the petitioner's decision to flee. The petitioner also did not argue that Fazzone had a conflict of interest. Not surprisingly, therefore, the habeas court's memorandum

---

[14] The petitioner alleged in count two of his amended habeas petition that Fazzone had rendered ineffective assistance because he "failed to file pretrial motions to preclude testimony about [the petitioner's] prior conviction and about his allegedly violent relationship with the [victim's] mother"; "failed to adequately investigate the allegations against [the petitioner]"; "failed to pursue the [victim's] medical, [Department of Children and Families], and/or school records"; "failed to properly introduce evidence"; "failed to object to [certain testimony and to certain statements by the court]"; "failed to consult and/or obtain an expert witness to rebut the state's expert"; "failed to file an application for sentence review"; and "failed to file an appeal."

of decision did not address any issues concerning Fazzone's statements to the court on November 10.

In his motion for rectification and articulation, the petitioner argued that "Fazzone's testimony before the habeas court revealed that he lied to Judge Swords" because he did not disclose the details of his meeting at the petitioner's apartment between November 6 and 10, 2014. The petitioner requested that the court either "revise its judgment denying the . . . petition for [a] writ of habeas corpus" or, in the alternative, "acknowledge the undisputed fact that . . . Fazzone lied to the trial court about his contacts with the [petitioner] prior to [his] failure to appear . . . ." The habeas court denied that request on the ground that Fazzone's statements to the trial court "were not relevant to the determination of the specific claims" at issue because the petitioner did not raise any such issues in his amended habeas petition or posttrial brief.

On appeal, the petitioner claims that the habeas court erred by failing to address whether Fazzone's alleged "concealment" of his role in or knowledge of the petitioner's decision to flee constituted ineffective assistance and/or a conflict of interest. He argues that Fazzone made "false statements to Judge Swords concealing his contacts with [the petitioner] and his role in [the petitioner's] failure to appear," that these alleged "lies to the trial court constituted quintessential ineffective assistance of counsel," and that, "if Fazzone had answered Judge Swords truthfully about his conduct over the weekend and his role . . . in [the petitioner's] disappearance, the court's ruling on the motion for [a] mistrial, and the outcome of the trial, would have been different." Separately, he argues that, "when [Fazzone] lied to the court on the morning of November 10, [2014] his self-interest in concealing his involvement with [the

petitioner's] disappearance trumped his duty to his client and to the court. There was at this point an irreconcilable conflict of interest." The petitioner contends that "[t]hese facts are on the record, do not require further fact finding, were known to both parties at the habeas trial and were available to the habeas court to consider—and should be considered here by this court." We disagree.

Our review of the record indicates that nothing in the amended habeas petition or the petitioner's posttrial brief reasonably can be construed as raising a claim that Fazzone rendered ineffective assistance and/or had a conflict of interest based on his alleged "concealment" of his role in or knowledge of the petitioner's decision to flee. Neither the amended petition nor the posttrial brief even mention Fazzone's statements to the court on November 10, 2014, much less claim that Fazzone lied in those statements. The only testimony elicited during the habeas trial concerning the November 10 hearing occurred when the respondent's counsel asked Fazzone: "Do you recall on that Monday morning telling the court that you had attempted several times over the weekend to contact [the petitioner] in furtherance of preparing for or strategizing for the trial and that you were unable to reach him?" Fazzone responded: "[T]hat's right, yes."[15] The petitioner's counsel did not confront Fazzone with the transcript of the November 10 hearing or ask him any questions about his statements to the court on that date. Thus, the record does

___

[15] In his principal appellate brief, the petitioner cites this testimony in support of his argument that, at the habeas trial, "Fazzone admitted that he had misled Judge Swords about his contacts with [the petitioner] over that crucial weekend." The petitioner does not explain how Fazzone's testimony acknowledging that he told the trial court that he was unable to reach the petitioner during the weekend constitutes an admission that he lied about his contacts with the petitioner. In fact, as explained herein, Fazzone expressly told the court that he had last seen the petitioner on Friday, November 7, 2014, which the amended petition identifies as the day of the meeting between Fazzone and the petitioner at the petitioner's apartment.

not support the petitioner's argument on appeal that he raised these claims before the habeas court.

Moreover, we disagree with the petitioner's contention that the existing record clearly establishes that Fazzone lied to the trial court on November 10, 2014. To the contrary, the record actually contradicts the petitioner's claim. The petitioner's contention that Fazzone concealed information about his contact with the petitioner appears to be based on the premise that Fazzone did not disclose the meeting at the petitioner's apartment.[16] As discussed previously, the hearing on the petitioner's motion to dismiss Fazzone as counsel took place on Thursday, November 6, after which the trial court continued the matter to Monday, November 10. During the habeas trial, Fazzone and the petitioner both testified that they had two discussions after the court continued the matter: one conversation took place at the courthouse after court adjourned on November 6, and another took place at the petitioner's apartment at some point between November 6 and 10. Although the transcript does not contain any testimony as to the day of the meeting at the petitioner's apartment, the amended petition alleges that the meeting in question took place "[t]he following day" after the court granted the continuance on Thursday, November 6. Thus, according to the allegations in the amended petition, the meeting in question took place on Friday, November 7.

The transcript of November 10, 2014, indicates that, contrary to the petitioner's contention, Fazzone informed the trial court that he had seen and spoken with the petitioner on Friday, November 7. Specifically,

---

[16] To the extent the petitioner intended to claim that Fazzone should have disclosed to the court that he had advised the petitioner to flee or otherwise led him to believe that fleeing was in his best interest, we reiterate that Fazzone testified that he did not advise the petitioner to flee, and the habeas court credited that testimony. Thus, any such claim is unsupported by the record and is contrary to the court's express factual findings.

when the court first asked Fazzone whether he knew the petitioner's whereabouts, Fazzone responded that he "saw [the petitioner] on Friday" and had "called him a couple of times last night" but "was not able to get in touch with him." Later, when the court asked whether it was accurate to say that Fazzone had "tried to get ahold of the [petitioner] over the weekend," Fazzone responded that he "spoke with [the petitioner] on Friday, and he had made it clear to me that he wanted to consult with other counsel," and that Fazzone "called [the petitioner] last evening because I had not heard back from him and . . . it went straight to voicemail . . . ." Thus, we disagree with the petitioner's contention that we can discern from the existing record that Fazzone lied to the court about his contacts with the petitioner.

In any event, as indicated previously, at the habeas trial, the petitioner did not confront Fazzone with the November 10, 2014 transcript or otherwise raise the claims that he was ineffective and/or had a conflict of interest based on any alleged false statements to the trial court. Because the petitioner did not present his claims to the habeas court, that court did not make the factual findings necessary to permit us to review those claims. See, e.g., *Ruiz* v. *Gatling*, 73 Conn. App. 574, 575, 808 A.2d 710 (2002) ("It is not the function of this court to find facts. . . . Our role is . . . to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.)). Accordingly, we decline to review the petitioner's unpreserved claims.

B

The petitioner's final claim is that the court erred by failing to conclude that Fazzone rendered ineffective assistance during the sentencing hearing. We decline

to review this claim because the petitioner failed to raise it before the habeas court.

The following additional facts and procedural history are relevant to this claim. As indicated previously, the petitioner failed to appear for his sentencing hearing, which was held on January 6, 2015. Fazzone represented the petitioner in absentia. At the outset of the hearing, the court found that the petitioner had "voluntarily, wilfully, and intentionally absented himself" and "[c]onsequently . . . waived his right to be addressed personally at the sentencing and to speak in mitigation of his punishment." The state noted that the victim had provided a letter to the court, which the court confirmed it had read. The state then presented its sentencing argument and recommended that the court sentence the petitioner to twenty-five years to serve followed by ten years of special parole.

Fazzone then addressed the trial court and argued in full: "I did have a chance to read the presentence investigation [report] in full and the letter from [the victim] written to Your Honor. I wanted to note that for the record, that I have read both in full. I have not— just for the record, I have not heard from [the petitioner] since the trial has taken place. I have no idea where, obviously, he is at this time, Your Honor. I feel sorrow that he did not attend his trial. [The petitioner] obviously, was found guilty from a jury of his peers, and so, therefore, I do feel very comfortable in saying that I feel extreme sorrow for what [the victim] and her family ha[ve] been through. And I . . . really do and I hope that [the victim] has a brilliant future and enjoys a successful future ahead of her, and I hope that their family can mend and live a very happy life. That's all, Your Honor." Thereafter, the court sentenced the petitioner to a term of twenty years of incarceration, followed by twenty-five years of special parole.

The habeas court's memorandum of decision did not address any claim pertaining to Fazzone's representation at sentencing. In his motion for rectification and articulation, the petitioner requested that the court either "revise its judgment denying [the] . . . petition for [a] writ of habeas corpus . . . in light of . . . Fazzone's failure to advocate for the [petitioner] at his in absentia sentencing," or "rectify the record in its memorandum of decision as to . . . Fazzone's representation of the [petitioner] at sentencing and the absence of any advocacy on behalf of the [petitioner]." The court denied that request on the ground that no such claim was alleged in the amended petition or addressed in the posttrial brief.

On appeal, the petitioner contends that "Fazzone's performance at the petitioner's sentencing was so deficient as to satisfy the *Cronic* presumption of prejudice" because, "[r]ather than provide any advocacy at all for the [petitioner], Fazzone merely expressed 'extreme sorrow' for the [victim]," and "completely failed to offer any argument on behalf of the [petitioner], to offer any mitigating evidence, to make any statement at all to support leniency in sentencing." The petitioner further argues that the court erred by failing to address that claim because "[t]he conduct of counsel at sentencing should have been understood to be part of the claim of ineffective assistance as trial counsel."

We conclude that the petitioner's claim is not reviewable because he failed to present it to the habeas court. The amended petition contains no allegations concerning Fazzone's performance at sentencing and, in fact, does not even mention that Fazzone represented the petitioner during the sentencing proceeding. Moreover, in the petition's prayer for relief, the petitioner did not request that the court order a new sentencing hearing. Similarly, the petitioner's posttrial brief does not present any argument that could reasonably be construed

as raising a claim that Fazzone's representation at sentencing constituted ineffective assistance. The petitioner's posttrial brief contains only one sentence concerning the sentencing proceeding, which merely states: "Fazzone remained counsel through the petitioner's sentencing." Finally, although the petitioner introduced the transcript of the sentencing proceeding as a full exhibit during the habeas trial, the petitioner did not confront Fazzone with that transcript or question him concerning his performance during that proceeding. In sum, there is nothing in the record to support the petitioner's claim that the court was on notice that the petitioner intended to challenge Fazzone's representation of him at sentencing. Accordingly, we decline to review the petitioner's claim.

The judgment is affirmed.

In this opinion MOLL, J., concurred.